UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

MATTHEW ISERAL,                    )
                                   )
        Petitioner,                )
                                   )        No. 6:10-CV-70-GFVT-HAI
v.                                 )
                                   )        REPORT & RECOMMENDATION
WARDEN JOHN T. MOTLEY,             )
                                   )
        Respondent.                )
                                   )
                                   )
                    ***   ***   ***   ***

On March 12, 2010, Petitioner Matthew Iseral, proceeding pro se, filed a Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. D.E. 1. After clarifying certain preliminary issues with respect to the timeliness of the Petition, the Court ordered a Response from Warden John T. Motley, which was filed on July 22, 2010. D.E. 11. Petitioner filed a Reply on September 28, 2010. D.E. 19. Pursuant to local practice, this matter was referred to the undersigned for a recommended disposition. 28 U.S.C. § 636(b).

For the reasons described below, Petitioner has failed to show that he is entitled to relief pursuant to § 2254. Therefore, the Court **RECOMMENDS** that his Petition for a writ of habeas corpus be **DENIED**.

## I. BACKGROUND

On July 17, 2001, judgment was entered against Petitioner by the McCreary Circuit Court after a jury returned a guilty verdict as to murder and first-degree rape. *See* Judgment and Sentence on Jury Trial, C.D. ROM "Court Documents," pp. 789-95 (Notice of Filing by Respondent at D.E. 12); *see also Iseral v. Commonwealth*, No. 2001-SC-0602-MR, 2003 WL

22227193, at *1 (Ky. Sept. 18, 2003), *re'hrg denied* Dec. 18, 2003.[1]   On appeal, the Supreme

Court of Kentucky described the facts of the case as follows:

> On June 8, 2000, police discovered a shallow grave in McCreary County
> containing the remains of T.D.   Testimony at trial described the events
> surrounding T.D.'s final hours progressing from her rape to her eventual murder
> on July 29, 1999.  She began the evening innocently enough, visiting area bars in
> the company of a friend.  As night advanced into early morning, however, T.D.
> found herself on the darkened porch of a burned out house and at the mercy of
> several men, including [Petitioner], his father Walter Iseral, and Daniel Tapley.
> The Commonwealth indicted each of these three men for repeatedly raping T.D.
> while they sat about the porch drinking and taking pills.  Following these attacks
> the men trundled their victim, naked but for a sleeping bag wrapped around her,
> deep into the woods where she was raped once again.  An eyewitness described
> his incredulity as he watched [Petitioner] next lead the victim to a newly dug
> grave into which she silently laid herself down.  [Petitioner] then pulled back the
> hammer of his sawed-off shotgun and killed T.D.

*Iseral*, 2003 WL 22227193 at * 1.

The jury recommended sentences of 50 years on the murder conviction and 20 years on

the rape conviction, which terms the trial court set to run concurrently.  *Id.*  On appeal, however,

the Supreme Court of Kentucky found that the trial judge's comments to the jury during the

sentencing phase were prejudicial and denied Petitioner due process of law; therefore, the case

was remanded for resentencing.  *Id.* at *13.   On April 14, 2006, Petitioner entered into a

sentencing agreement with the Commonwealth whereby the Commonwealth agreed to

recommend sentences of 30 years on the murder conviction and 20 years on the rape conviction,

to run consecutively; thus, on May 3, 2006, Petitioner was ultimately sentenced to 50 years.  *See*

Order Overruling Movant's Motion to Vacate, Alter or Amend Conviction and Sentence

Pursuant to RCr 11.42, C.D. ROM "Documents Appendix," pp. 171-86 (Notice of Filing by

---

[1]  This opinion is filed on C.D. ROM "Documents Appendix," pp. 128-50 (Notice of Filing by
Respondent at D.E. 12).

Respondent at D.E. 12);[2] *see also Iseral v. Commonwealth*, No. 2007-CA-001714-MR, 2008 WL 4998501, at *2 (Ky. App. Nov. 26, 2008), *cert. denied*, Oct. 21, 2009.

With the exception of Petitioner's sentence, the Supreme Court of Kentucky otherwise affirmed Petitioner's convictions on direct appeal.  *See Iseral*, 2003 WL 22227193 at *13. Petitioner did not seek review by the United States Supreme Court, but, on December 19, 2006, Petitioner filed a pro se motion in McCreary Circuit Court to vacate his judgment pursuant to Kentucky Rule of Criminal Procedure (RCr) 11.42.  *See* D.E. 1-5.  In his motion, Petitioner presented four claims of ineffective assistance of counsel. *See id.*  The McCreary Circuit Court denied his motion on August 9, 2007.  *See* Order Overruling RCr 11.42 Motion.  The Kentucky Court of Appeals affirmed the denial of Petitioner's RCr 11.42 motion on November 26, 2008. *See Iseral*, 2008 WL 4998501.  The Supreme Court of Kentucky denied discretionary review on October 21, 2009.

In his § 2254 Petition, Petitioner asserts fourteen grounds for relief.  He also attaches as exhibits the majority of his brief to the Supreme Court of Kentucky on direct appeal and his RCr 11.42 motion.  *See* D.E. 1-1 – D.E. 1-5.  Petitioner raises the following claims: (1) the trial court minimized the responsibility of the jury in sentencing and informed the jury of an Allen charge; (2) the defense was prejudiced when the trial court denied a continuance when the prosecution announced a "surprise witness;" (3) the trial court denied Petitioner's right to confront witnesses Daniel Crabtree and Mike McDonald; (4) the trial court erred by refusing to allow Mildred Coffey to testify or to accept her testimony by avowal; (5) the trial court erred by denying Petitioner's motion for a directed verdict on the charge of first-degree rape; (6) the trial court erred by prohibiting defense witnesses from testifying regarding Petitioner's "consciousness of innocence;" (7) the trial court erred by refusing to instruct the jury on voluntary intoxication,

---

[2]  Hereinafter "Order Overruling RCr 11.42 Motion."

lesser-included offenses, and an adverse inference of missing evidence; (8) the trial court erred by allowing the Commonwealth to use a large scale replica of the grave site to illustrate the uncontested death of the victim; (9) the trial court erred by allowing the introduction of hearsay statements allegedly made by the victim; (10) the trial court erred by improperly dismissing jurors, failing to strike jurors for cause, and permitting manipulation of the jury pool; (11) trial counsel was ineffective for failing to obtain a mental evaluation to determine Petitioner's competency to stand trial; (12) trial counsel was ineffective for failing to investigate exculpatory evidence; and (13) trial counsel was ineffective for failing to impeach the Commonwealth's witnesses.  These claims will be addressed in turn.

## II.  DISCUSSION

Generally speaking, a prisoner has a statutory right to collaterally attack his conviction or sentence.  *See West v. Bell,* 242 F.3d 338, 346 (6th Cir. 2001) (stating that § 2254 provides state prisoners with a statutory right to file a habeas corpus petition).  A state prisoner may seek federal habeas corpus relief on the ground that he is being held in custody in violation of the Constitution, laws or treaties of the United States.  28 U.S.C. § 2254(a).  Generally, a petitioner must first exhaust his state court remedies before instituting a proceeding pursuant to 28 U.S.C. § 2254, unless "there is an absence of available State corrective process; or circumstances exist that render such process ineffective to protect the rights of the applicant."  28 U.S.C. § 2254(b)(1).  To satisfy the exhaustion requirement, a habeas petitioner must fairly present the substance of his federal claims to the state court.  *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam).  This ensures that state courts, which have an equal obligation to protect the constitutional rights of defendants, "have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding."  *Picard v. Connor*, 404 U.S. 270, 275 (1971).

### A.  Standard of Review and Deference Due to State Court Decisions

The Anti-Terrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) (AEDPA) applies to all habeas corpus petitions filed after April 24, 1996, and requires "heightened respect" for legal and factual determinations made by state courts.  *See Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  Section 2254(d), as amended by AEDPA, provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

All findings of fact by the state court are presumed to be correct, and can be rebutted only by "clear and convincing evidence."  *Mitchell v. Mason*, 325 F.3d 732, 737-38 (6th Cir. 2003), *cert. denied* 543 U.S. 1080 (2005); 28 U.S.C. § 2254 (e)(1).  Legal conclusions made by state courts are also given substantial deference under AEDPA.  As the Supreme Court has reiterated: "A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result.  A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner."  *Brown v. Payton*, 544 U.S. 133, 141 (2005) (citations omitted).

The Supreme Court has stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be *unreasonable*."  *Mitchell*, 325 F.3d at 738 (quoting *Williams v. Taylor,* 529 U.S. 362, 411 (2000)) (emphasis added).  In addition, federal courts may only consider the holdings, as opposed to the dicta, of Supreme Court opinions as of the time of the state court decision when evaluating whether the state court unreasonably applied "clearly established federal law."  *Id.* (citing *Williams*, 529 U.S. at 412).

### B.  Procedural Default

As a general rule, state prisoners must first exhaust their state court remedies before seeking a writ of habeas corpus in federal court.  28 U.S.C. § 2254(b)(1)(A).  *See also Rhines v. Weber,* 544 U.S. 269, 274 (2005) (noting that "AEDPA preserved [the] total exhaustion requirement").  A petitioner exhausts his remedies "by fairly presenting his federal claims to the state courts," *Wilson v. Mitchell*, 498 F.3d 491, 498 (6th Cir. 2007); federal courts do not have jurisdiction to review habeas claims that have not been "fairly presented."  *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (citing *Newton v. Millon*, 349 F.3d 873, 877 (6th Cir. 2003)).  "A claim may only be considered 'fairly presented' if the petitioner asserted both a factual and legal basis for his claim in state court."  *Id.*

The Sixth Circuit has held that "there are four actions a petitioner can take which are significant to the determination of whether a claim has been 'fairly presented:' (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts

well within the mainstream of constitutional law." *Whiting v. Burt*, 395 F.3d 602, 613 (6th Cir. 2005) (citations omitted).

"Although general allegations of the denial of a 'fair trial' or 'due process' have been held insufficient to 'fairly present' federal constitutional claims, a petitioner need not recite 'book and verse on the federal constitution.'" *Fulcher*, 444 F.3d at 798 (quoting *Newton*, 349 at 877). However, "it is not enough [for a petitioner] to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court." *Gray v. Netherland*, 518 U.S. 152, 163 (1996) (rehearing denied). "[A] claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee. . . ." *Id.* at 162-63 (citing *Picard v. Connor*, 404 U.S. 270 (1971)). "It is not sufficient that all the facts necessary to support the federal claim were before the court or that the petitioner made a 'somewhat similar' state-law claim." *Gross v. Warden, Lebanon Corr. Inst.*, 426 F. App'x 349, 355 (6th Cir. 2011) (citations omitted).

The Sixth Circuit has held that a petitioner does not fairly present a federal claim to the state court where his brief alleges only a general denial of the right to due process and a fair trial and "relies on a number of state court cases but does not cite a single federal case." *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2005). In addition, a "bare and isolated citation to the Fourteenth and Sixth Amendments" is insufficient to fairly present a federal claim to the state court. *Id.*

If a petitioner fails to fairly present his federal claims to the state court, his petition should be dismissed for lack of exhaustion. *Hannah v. Conley*, 49 F.3d 1193, 1195 (6th Cir. 1995) (citing *Rose v. Lundy*, 455 U.S. 509, 518-20 (1982)); *see also* 28 U.S.C. § 2254(b) (setting forth the exhaustion requirement). However, "[i]f a prisoner fails to present his claims to the

state courts and he is now barred from pursuing relief there, his petition should not be dismissed for lack of exhaustion because there are simply no remedies available for him to exhaust." *Id.* at 1195-96. In this instance, a petitioner's claims are procedurally defaulted and "the prisoner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991)).

### C.  Grounds 1-10

#### 1.  Petitioner's Claim That the Trial Court Minimized the Responsibility of the Jury at Sentencing and Informed the Jury of an Allen Charge

During the penalty phase of Petitioner's trial, when the jury foreperson indicated the jurors were having difficulty reaching a unanimous sentence, the trial judge made reference to an "Allen Charge" and also made several comments that could have led the jurors to believe their decision would not be final. *See Iseral*, 2003 WL 22227193 at *11-12. Petitioner claims this lessened the jury's responsibility for its decision and "clearly indicated that [the judge] was not willing to allow them to be hung, and would force them to remain in deliberations until the minority position caved in and allowed a conviction." D.E. 1 at 5.

As Respondent notes, Petitioner raised this issue on direct appeal, and the Supreme Court of Kentucky agreed with Petitioner's position. *See* D.E. 11 at 16; *see also Iseral*, 2003 WL 22227193 at *11-13. The court found that "the comments [of the trial judge] rendered the penalty phase so fundamentally unfair as to deny [Petitioner] due process of law," and remanded Petitioner's case for a new sentencing phase. *Iseral*, 2003 WL 22227193, at *13. Petitioner and the Commonwealth then entered into a sentencing agreement, and Petitioner was ultimately sentenced to a total of 50 years imprisonment on May 3, 2006. *See Iseral*, 2008 WL 4998501 at 2.

Petitioner was granted full relief on Ground 1 when the Supreme Court of Kentucky remanded his case for resentencing. Petitioner then voluntarily entered into a sentencing agreement with the Commonwealth. This Court will not issue a writ of habeas corpus when Petitioner's complaint has already been addressed and cured by the state court. Petitioner is not entitled to relief on Ground 1.

## 2. Petitioner's Claim That the Trial Court Failed to Grant a Continuance After a "Surprise Witness" Was Announced

Petitioner next argues that the trial court erred by failing to grant a continuance when the Commonwealth announced a "surprise witness" the morning of Petitioner's trial, and that this error denied him due process of law. D.E. 1 at 7. The Commonwealth's witness and Petitioner's cousin, Daniel Crabtree, testified that Petitioner confessed to him that he murdered T.D. *See Iseral*, 2003 WL 22227193 at * 1. To prevent potential evidentiary issues stemming from this new evidence, the trial court severed Petitioner's trial from the trial of his co-defendants, Walter Iseral and Daniel Tapley. *See id.* However, the court denied Petitioner's motion for a continuance. *See id.* Petitioner claims a continuance was required to allow him additional time to investigate Crabtree's background in preparation for cross-examination, and further notes that he was the only defendant facing the death penalty. D.E. 1 at 7.

### a. Ground 2 Is Procedurally Defaulted

Petitioner raised this claim on direct appeal, and his argument was based entirely upon Kentucky law,[3] with the exception of a brief citation to the Fifth, Sixth, and Fourteenth Amendments to the Constitution. *See* D.E. 1-1 at 7-10; D.E. 1-2 at 1-4. Such a brief and isolated citation to the Constitution is insufficient to fairly present a federal claim to the state court and preserve the issue for federal review. *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir.

---

[3] Petitioner argued the trial court abused its discretion under RCr 9.04, which obviously is not a federal constitutional matter.

2005).  "To escape procedural default, claims that the rights to due process and to a fair trial have been violated must of themselves be fairly presented, rather than functioning as catchall language appearing within the presentation of other non-constitutional arguments." *Blackmon v. Booker*, 394 F.3d 399, 401 (6th Cir. 2004).

Thus, Petitioner did not fairly present his federal claims to the state court, and he cannot now do so.  Kentucky courts do not allow a party to relitigate an issue in a post-conviction proceeding that was decided on direct appeal or could have been raised on direct appeal.  *See Commonwealth v. Tamme*, 83 S.W.3d 465, 468 (Ky. 2002) (holding that a RCr 11.42 movant cannot relitigate issues decided on direct appeal or that could have been raised on direct appeal); *see also McQueen v. Commonwealth*, 948 S.W.2d 415, 416 (Ky. 1997) (stating that Kentucky Civil Rule 60.02 "is not intended merely as an additional opportunity to relitigate the same issues which could have 'reasonably been presented' by direct appeal or RCr 11.42 proceedings" (citations omitted)).  Therefore, Ground 2 is procedurally defaulted.

Ground 2 is procedurally defaulted, and Petitioner has not argued "cause" and "prejudice" for the default.

### 3.  Petitioner's Claim That the Trial Court Denied Petitioner the Right to Confront Witnesses

Petitioner argues the trial court violated his Sixth Amendment right to confront witnesses against him by denying him the opportunity to establish the bias of two prosecution witnesses, Daniel Crabtree and Mike McDonald.  D.E. 1 at 8.  According to Petitioner, Lisa Young, Petitioner's maternal aunt and Daniel Crabtree's mother, had dated McDonald.  *Id.*  Petitioner claims both Crabtree and McDonald physically abused Young, and Petitioner defended her against their attacks.  *Id.*  He argues that his defense of Young motivated Crabtree and McDonald to testify against him.  *Id.*

10

Petitioner raised this issue on direct appeal.  *See* D.E. 1-2 at 4-9.  In his appellate brief, Petitioner described his version of what occurred at trial, and his belief that he was denied the right of confrontation:

> During the cross-examination the defense asked Daniel Crabtree if he ever physically assaulted his mother.  He denied he had ever abused her.  The Commonwealth's subsequent objection was sustained.  Later the defense called Crabtree's mother, Lisa Young, as a witness.  Ms. Young also testified that she was Mr. Iseral's maternal aunt and she had previously dated Mike McDonald for a short period of time.  The defense asked Young if McDonald had abused her.  She said yes.  The Commonwealth objected based on relevancy.  At [a] bench conference, defense [counsel] explained that the Iseral boys had defended Ms. Young against the two men.  Mr. Iseral believed this motivated the men to lie about him during their testimony and the defense had a right to show evidence of this motivation especially since these men were material witnesses to the Commonwealth's case.  The defense also explained that it believed that the testimony showed a pattern of abuse toward women by McDonald, who had previously testified that he drunkenly broke out a window of his home and scared Ms. Day enough that she had fled on foot from his home on the night she was murdered.  The court sustained the Commonwealth's objection saying the evidence wasn't relevant.

*Id.* at 4-5 (citations omitted).

On appeal, the Supreme Court of Kentucky found the trial judge did not abuse his discretion in limiting the cross-examination of these witnesses "because [Petitioner] failed to clearly establish the relevance of the excluded testimony."  *Iseral*, 2003 WL 22227193 at *3.  The court noted that while Petitioner explained, outside the presence of the jury, how testimony concerning the witnesses' abuse of Young could convey bias, Petitioner also argued that the testimony was relevant to show that McDonald "engaged in a general pattern of abuse toward women."  *Id.*  The court thus concluded, "Counsel skipped over the most basic evidence of bias and instead chose to focus solely on the witnesses' abusive behavior.  Viewed alone, this alleged behavior had little relevance to this case.  [Petitioner] introduced no other evidence supporting

his theory of bias, therefore the court did not abuse its discretion by excluding this testimony."

*Id.*

The United States Supreme Court has held that, while exploring a witness's motivations for testifying is a proper avenue of cross-examination, "[i]t does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness." *Delaware v. Van Arsdall*, 475 U.S. 673, 678-79 (1986). The Court further stated:

> On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. And as we observed earlier this Term, 'the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'

*Id.* at 679 (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam)).

The Supreme Court of Kentucky correctly identified and applied the *Van Arsdall* factors in reaching its decision that the trial court acted within its discretion in limiting Petitioner's cross-examination of Crabtree and Young. *See Iseral*, 2003 WL 22227193 at *3 (quoting *Olden v. Kentucky*, 488 U.S. 227, 232 (1988), in turn quoting *Delaware v. Van Arsdall*, 475 U.S. at 679). The court found that Petitioner intended to focus on Crabtree's and McDonald's abusive behavior, and that this behavior had little relevance to Petitioner's case. Thus, although the court did not specifically address Petitioner's Sixth Amendment claim, it applied the same factors this Court employs when determining whether Petitioner's Sixth Amendment rights were violated. When a state court's inquiry "bears at least 'some similarity' to a determination of [a petitioner's federal claim]," the federal court employs a modified AEDPA standard when determining whether a petitioner is entitled to habeas relief. *Bey v. Bagley*, 500 F.3d 514, 520 (6th Cir.

2007).  This modified approach "'requires [us] to conduct a careful review of the record and applicable law, but nonetheless bars [us] from reversing unless the state court's decision is contrary to or an unreasonable application of federal law [i.e., Supreme Court precedent]." *Id.* (brackets in original).  The Court has conducted a careful review of the record, and cannot find that the state court unreasonably applied Supreme Court precedent granting trial judges wide discretion to limit the scope of cross-examination, citing relevance as a proper limiting factor. Limitations based upon relevance are expressly permitted by *Van Arsdall*.  Therefore, Petitioner is not entitled to relief on Ground 3.

### 4.  Petitioner's Claim That the Trial Court Refused to Allow Mildred Coffey to Testify or to Accept Her Testimony by Avowal

Petitioner argues the trial court erred by denying him the right to call Mildred Coffey as a witness.  D.E. 1 at 10.  Petitioner attempted to call Coffey to the witness stand on the third day of trial to impeach the testimony of her son, Ben Coffey.  *Iseral*, 2003 WL 22227193 at *4.  Ben had previously testified that the murder weapon, "a now-rusty shotgun," was the same gun loaned by him to Petitioner.  *Id.*  According to Petitioner, Mildred Coffey would have testified that the murder weapon was not the gun owned by her son and loaned to him.  D.E. 1 at 10.

Petitioner raised this claim on direct appeal, and his argument was based entirely upon Kentucky case law and Kentucky Rules of Criminal Procedure 9.48 and 9.52.  *See* D.E. 1-2 at 9-10; D.E. 1-3 at 1-4.  The only reference to federal law was a brief citation to the Fifth, Sixth, and Fourteenth Amendments to the Constitution.  *See* D.E. 1-3 at 4.  He did not adequately develop his constitutional claims before the Supreme Court of Kentucky.  Such a brief and isolated citation to the Constitution is insufficient to fairly present a federal claim to the state court and preserve the issue for federal review.  *Slaughter*, 450 F.3d at 236.  "To escape procedural default, claims that the rights to due process and to a fair trial have been violated must of themselves be

fairly presented, rather than functioning as catchall language appearing within the presentation of other non-constitutional arguments." *Blackmon*, 394 F.3d at 401.

Thus, Petitioner did not fairly present his federal claims to the state court, and he cannot now do so. Kentucky courts do not allow a party to relitigate an issue in a post-conviction proceeding that was decided on direct appeal or could have been raised on direct appeal. *See Tamme*, 83 S.W.3d at 468 (holding that a RCr 11.42 movant cannot relitigate issues decided on direct appeal or that could have been raised on direct appeal); *see also McQueen*, 948 S.W.2d at 416 (stating that Kentucky Civil Rule 60.02 "is not intended merely as an additional opportunity to relitigate the same issues which could have 'reasonably been presented' by direct appeal or RCr 11.42 proceedings" (citations omitted)). Therefore, Ground 4 is procedurally defaulted.

Ground 4 is procedurally defaulted, and Petitioner has not argued "cause" and "prejudice" for the default.

### 5. Petitioner's Claim That the Trial Court Denied Petitioner's Motion for a Directed Verdict on the Charge of First-Degree Rape

Petitioner claims the trial court erred by denying his motion for a directed verdict on the charge of first-degree rape, and that this error denied him due process of law. D.E. 1 at 11. He argues that the testimony of Joey Spradlin, the Government's witness, was unreliable because Spradlin admitted to being under the influence of alcohol and drugs on the night of T.D.'s murder. *Id.* Because the Government's case rested in large part on Spradlin's testimony, and there was no physical evidence of rape (given that the victim's body was not found until nearly a year after she was murdered), Petitioner claims the court should have granted his motion for a directed verdict. *Id.*

"[I]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at

the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."

*Jackson v. Virginia*, 443 U.S. 307, 324 (1979).   The Supreme Court has further noted:

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

*Id.* at 319.

The Court analyzes Petitioner's directed verdict claim under the "unreasonable application" prong of § 2254(d)(1).  *Tinsley v. Million*, 399 F.3d 796, 815 (6th Cir. 2005); *Thompson v. Bock*, 215 F. App'x 431, 436 (6th Cir. 2007) ("[R]elief is only available when the decision results in an objectively unreasonable application of federal law.")

Under Kentucky law, rape in the first-degree is defined as "sexual intercourse with another person by forcible compulsion; or . . . sexual intercourse with another person who is incapable of consent because he: 1. Is physically helpless; or 2. Is less than twelve (12) years old."  Ky. Rev. Stat. § 510.040(1).  On direct appeal, the Supreme Court of Kentucky applied the standard of review for a directed verdict set forth in *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991), which states, "'if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then is the defendant entitled to a directed verdict of acquittal.'"  *Iseral*, 2003 WL 22227193 at *5 (quoting *Benham*, 816 S.W.2d at 187).   The court then held that the trial court did not err by denying Petitioner's motion for a directed verdict.  *Id.* The court stated:

> The Commonwealth presented more than ample evidence for reasonable jurors to conclude that [Petitioner] raped T.D..  The evidence introduced at trial included: an eyewitness account of the multiple instances of sexual intercourse between T.D., [Petitioner], and his two co-defendants on the night of her murder; a statement by the victim telling [Petitioner] to stop intercourse; and the subsequent

shooting and burial of T.D., an apparent attempt to destroy evidence of the rape. We therefore find no error in the trial court's denial of the motion for directed verdict.

*Id.*

The Supreme Court of Kentucky would have found error if, under the evidence as a whole, it would have been clearly unreasonable for the jury to find guilt. This standard is not contrary to clearly established Supreme Court precedent—as set forth in *Jackson*—and its application to the facts of this case was not unreasonable. *See Tinsley*, 399 F.3d at 815 ("The Kentucky Supreme Court found that there was 'ample evidence to submit to the jury' and declined to disturb the jury's verdict. The test that the Kentucky Supreme Court used (whether 'under the evidence as a whole it would not be clearly unreasonable for a jury to find the defendant guilty'), is not contrary to clearly established Supreme Court precedent, and its application was not unreasonable in this case.") (internal citations omitted)

A careful review of the record and the analysis employed by the state court reveals that the court's decision was not an unreasonable application of federal law, as set forth in *Jackson*. A rational trier of fact could have found Spradlin's testimony, combined with the murder and burial of T.D.—an apparent attempt to conceal evidence of the rape—to be credible evidence of rape. Ultimately, it was therefore appropriate to submit the rape charge to the jury and the decision whether or not to believe Spradlin's testimony rested with the jury. *See Jackson*, 443 U.S. at 319. Thus, Petitioner is not entitled to relief on Ground 5.

### 6. Petitioner's Claim That the Trial Court Prohibited Testimony Concerning Petitioner's "Consciousness of Innocence"

Petitioner argues that the state court erred by prohibiting two deputy jailers from testifying regarding Petitioner's "consciousness of innocence." D.E. 1 at 11. He claims that jailers Mike Stephens and Herbert Rose would have offered testimony that there were two

escape incidents at the institution where Petitioner was housed awaiting trial, but rather than escaping himself, Petitioner alerted and aided the jailers despite great personal risk.   *Id.* Petitioner argues that his failure to flee demonstrated the lack of a guilty conscience.

Petitioner raised this claim on direct appeal, and his argument was based entirely upon Kentucky case law.  *See* D.E. 1-3 at 9-10; D.E. 1-4 at 1-3.  The only references to federal law were brief citations to the Fifth Circuit case *United States v. Ballard*, 423 F.2d 127 (5th Cir. 1970) and to the Fifth and Fourteenth Amendments to the Constitution.  *See* D.E. 1-4 at 1, 3. First, Petitioner cited to *Ballard* for the proposition that evidence of flight is admissible to show consciousness of guilt.  D.E. 1-4 at 1.  Petitioner never argued, nor could he, that *Ballard* established a constitutional right to offer evidence of consciousness of innocence.  Second, Petitioner did not adequately develop his constitutional claims before the Supreme Court of Kentucky.  Such a brief and isolated citation to the Constitution is insufficient to fairly present a federal claim to the state court and preserve the issue for federal review.  *Slaughter*, 450 F.3d at 236.  "To escape procedural default, claims that the rights to due process and to a fair trial have been violated must of themselves be fairly presented, rather than functioning as catchall language appearing within the presentation of other non-constitutional arguments."  *Blackmon*, 394 F.3d at 401.

Thus, Petitioner did not fairly present his constitutional claims to the state court, and he cannot now do so.  Kentucky courts do not allow a party to relitigate an issue in a post-conviction proceeding that was decided on direct appeal or could have been raised on direct appeal.  *See Tamme*, 83 S.W.3d at 468 (holding that a RCr 11.42 movant cannot relitigate issues decided on direct appeal or that could have been raised on direct appeal); *see also McQueen*, 948 S.W.2d at 416 (stating that Kentucky Civil Rule 60.02 "is not intended merely as an additional

opportunity to relitigate the same issues which could have 'reasonably been presented' by direct appeal or RCr 11.42 proceedings" (citations omitted)).   Therefore, Ground 6 is procedurally defaulted.

Ground 6 is procedurally defaulted, and Petitioner has not argued "cause" and "prejudice" for the default.

### 7.  Petitioner's Claim That the Trial Court Refused to Instruct the Jury on Voluntary Intoxication, Lesser-Included Offenses, and Adverse Inference of Missing Evidence

Petitioner next argues that the state court erred in refusing to instruct the jury on voluntary intoxication, lesser-included offenses, and an adverse inference of missing evidence, and in doing so denied him due process of law.  D.E. 1 at 11.  Each of these complaints will be addressed in turn.

*a.  Petitioner's Claim That the Failure to Instruct as to Voluntary Intoxication Was Error*

Petitioner claims the trial court erred by refusing to instruct the jury on voluntary intoxication because "[t]he Commonwealth's only eyewitness testified that everyone, including himself, consumed large amounts of drugs and alcohol, although he claimed that they did not pass out."  *Id.*  Petitioner did fairly present this claim.  *See* D.E. 1-4 at 7-8 (citing to *Beck v. Alabama*, 447 U.S. 625 (1980) for the proposition that a jury may be unwilling to acquit a defendant where they believe him to be guilty of an offense on which they were not instructed, and arguing that the failure of the trial court to instruct the jury on voluntary intoxication and lesser-included offenses denied Petitioner due process and a fair trial in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution).

On appeal, the Supreme Court of Kentucky found that the trial court did not abuse its discretion in refusing to give an instruction on voluntary intoxication.  *Iseral*, 2003 WL 22227193 at *7.  The court noted,

> After raping and sodomizing T.D. over the course of the night, [Petitioner] showed enough presence of mind to lead his victim to a previously prepared grave, whereupon he murdered her.  This sequence of events portrays a level of planning inconsistent with one who is so intoxicated that he is unaware of what he is doing.

*Id.*

In reaching its decision, the Supreme Court of Kentucky applied Kentucky law determining when a voluntary intoxication instruction is warranted and did not consider whether such a rule violated Petitioner's due process rights.  Because the state court did not address Petitioner's federal due process claim, and did not employ a somewhat similar state law analysis, the Court reviews Petitioner's due process claim *de novo*.  *See Gaston v. Brigano*, 208 F. App'x 376, 385 (6th Cir. 2006).  *See also Danner v. Motley*, 448 F.3d 372, 376 (6th Cir. 2006).

Even under *de novo* review, however, Petitioner's claim fails.  The United States Supreme Court has held that it does not violate the Due Process Clause for a judge to instruct the jury that voluntary intoxication cannot negate the intent to commit the crime.  *Montana v. Egelhoff*, 518 U.S. 37, 56 (1996).  In so holding, the Court noted that it is constitutional for a state to "disallow[   ] consideration of voluntary intoxication when a defendant's state of mind is at issue."  *Id.*   It follows, then, that it was constitutional for the state court to refuse to instruct the jury on voluntary intoxication, and Petitioner was not denied due process of law.

      *b.  Petitioner's Claim That the Failure to Instruct on Lesser-Included Offenses Was Error*

Petitioner also argues that the state court erred in failing to instruct the jury on lesser-included offenses.  D.E. 1 at 11.  Although his Petition fails to provide greater detail, he urges

the Court to refer to his appellate brief, in which Petitioner argued the trial court should have instructed the jury on wanton murder, second-degree manslaughter, third-degree rape, and sexual misconduct.  D.E. 1-4 at 5.

In reaching its decision, the Supreme Court of Kentucky applied the framework set forth in *Houston v. Commonwealth*, 975 S.W.2d 925 (Ky. 1998), requiring instructions on lesser-included offenses only "'if, considering the totality of the evidence, the jury might have a reasonable doubt as to the defendant's guilt of the greater offense, and yet believe beyond a reasonable doubt that he is guilty of the lesser offense.'"  *Iseral*, 2003 WL 22227193 at *7 (quoting *Houston*, 975 S.W.2d at 929 (citing *Wombles v. Commonwealth*, 831 S.W.2d 172, 175 (Ky. 1992))).  In *Beck v. Alabama*, 447 U.S. 625 (1980), the United States Supreme Court stated that a defendant is entitled to an instruction on a lesser-included offense "'if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater.'"  *Beck v. Alabama*, 447 U.S. 625, 635 (1980) (quoting *Keeble v. United States*, 412 U.S. 205, 208 (1973)).  Although citing to Kentucky law, the Supreme Court of Kentucky applied a similar analysis to the rule set forth in *Beck*, which thoroughly explained why the jury could not have rationally found Petitioner guilty of any of the lesser-included offenses for which he requested an instruction.  *See Iseral*, 2003 WL 22227193 at *7-8.  Because the state court employed a similar analysis to that set forth in *Beck*, the Court applies the modified AEDPA approach.

As the court explained, wanton murder is not a lesser-included offense of murder, but is "'murder committed with a different state of mental culpability.'"  *Id.* at *7 (quoting *Smith v. Commonwealth*, 737 S.W.2d 683, 689 (Ky. 1987)).  The Supreme Court of Kentucky correctly noted that the circumstances of T.D.'s murder showed "both intent and planning on the part of [Petitioner]" and were inconsistent with one engaged in wanton conduct.  *Id.*  As the court

explained, the jury could not have rationally found Petitioner guilty of wanton murder.   In addition, the Constitution does not require trial courts to instruct the jury on offenses that are ***not*** lesser-included offenses of the crime charged.   *See Hopkins v. Reeves*, 524 U.S. 88, 94-98 (1998).   Thus, there was no constitutional error by the state court when it refused to instruct the jury on wanton murder.

With respect to an instruction on second-degree manslaughter, the Supreme Court of Kentucky correctly noted that such an instruction would have been required if the jury was also instructed on voluntary intoxication.   *Iseral*, 2003 WL 22227193 at *7 (citing *Fields v. Commonwealth*, 12 S.W.3d 275, 282 (Ky. 2000)).   As noted above, however, the trial court reasonably determined that Petitioner was not entitled to an instruction on voluntary intoxication. Therefore, it was reasonable for the trial court to conclude that the jury could not have rationally found Petitioner guilty of second-degree manslaughter while acquitting him of murder, in turn, the Supreme Court of Kentucky did not contradict any clearly established federal law.

The Supreme Court of Kentucky also reasonably concluded that, under Kentucky law at the time the crimes at issue occurred, the offenses of third-degree rape and sexual misconduct were not applicable to the facts of Petitioner's case.   *Iseral*, 2003 WL 22227193 at *8.   The court noted that the offense of third-degree rape applies in situations where the victim is mentally incapacitated as a result of a controlled or intoxicating substance administered to the victim without her consent.   *Id.* (citing Ky. Rev. Stat. § 510.010(5)).   As the court stated, there was no evidence suggesting T.D. "became intoxicated against her will."   *Id.*   The court also correctly noted that Kentucky courts have long held that the offense of sexual misconduct is intended to apply in situations where the victim and defendant are under 21 years of age.   *Id.* (citing *Johnson v. Commonwealth*, 864 S.W.2d 266, 277 (1993)).

The Supreme Court of Kentucky did not contradict federal law, as set forth in *Beck*, by concluding that the jury could not rationally believe beyond a reasonable doubt that Petitioner was guilty of wanton murder or the lesser-included offenses of second-degree manslaughter, third-degree rape, and sexual misconduct.

### c.  Petitioner's Claim That the Failure to Instruct on Missing Evidence and to Give an Adverse Inference Instruction Was Error

Finally, Petitioner argues that the trial court erred by failing to give an adverse inference instruction with respect to law enforcement's failure to secure certain 911 recordings and the victim's make-up bag.  D.E. 1 at 11.

As the Supreme Court of Kentucky noted, absent bad faith, "failure to preserve potentially useful evidence does not constitute a denial of due process of law."  *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).  The Supreme Court of Kentucky expressly considered Petitioner's due process claim and rejected it.  As the court noted, Petitioner has not presented any evidence of bad faith by the police or the Government.  Further, Petitioner has pointed to no constitutional right to an adverse inference instruction.  The Supreme Court of Kentucky found that law enforcement deleted the 911 recordings after 30 days as part of their normal recycling process.  *Iseral*, 2003 WL 22227193 at *8-9.  The court also found that it was unclear whether the police even knew of the existence of the make-up bag before trial.  *Id.* at *9.  Given these facts, Petitioner was not denied due process by the failure of the state court to give an adverse inference instruction, and the Supreme Court of Kentucky did not unreasonably apply federal law by so holding.

### 8.  Petitioner's Claim That the Trial Court Allowed the Use of a Large-Scale Replica of the Grave Site

Petitioner next argues that the trial court improperly allowed the use of a large scale replica of the grave site.  D.E. 1 at 12.  Petitioner claims it was error to allow the jury to view a large, vivid replica when the victim's body was no longer in the same condition and her death was undisputed.  *Id.*

Petitioner raised this claim on direct appeal, and his argument was based entirely upon Kentucky case law and Kentucky Rule of Evidence 401.  *See* D.E. 1-4 at 8-10.  The only reference to federal law was a brief citation to the Fifth, Sixth, and Fourteenth Amendments to the Constitution.  *See* D.E. 1-4 at 10.  Petitioner did not adequately develop his constitutional claims before the Supreme Court of Kentucky.  Such a brief and isolated citation to the Constitution is insufficient to fairly present a federal claim to the state court and preserve the issue for federal review.  *Slaughter*, 450 F.3d at 236.  "To escape procedural default, claims that the rights to due process and to a fair trial have been violated must of themselves be fairly presented, rather than functioning as catchall language appearing within the presentation of other non-constitutional arguments."  *Blackmon*, 394 F.3d at 401.

Thus, Petitioner did not fairly present his constitutional claims to the state court, and he cannot now do so.  Kentucky courts do not allow a party to relitigate an issue in a post-conviction proceeding that was decided on direct appeal or could have been raised on direct appeal.  *See Tamme*, 83 S.W.3d at 468 (holding that a RCr 11.42 movant cannot relitigate issues decided on direct appeal or that could have been raised on direct appeal); *see also McQueen*, 948 S.W.2d at 416 (stating that Kentucky Civil Rule 60.02 "is not intended merely as an additional opportunity to relitigate the same issues which could have 'reasonably been presented' by direct

appeal or RCr 11.42 proceedings" (citations omitted)).   Therefore, Ground 8 is procedurally defaulted, and Petitioner has not attempted to argue "cause" and "prejudice" for the default.

In addition, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle*, 502 U.S. at 67-68.  Thus, even if Ground 8 were not procedurally defaulted, Petitioner would only be entitled to habeas relief if the introduction of the large-scale replica was so prejudicial or inflammatory that it violated Petitioner's right to due process of law.  The Supreme Court of Kentucky noted that the Government's forensic expert used the replica to demonstrate, for example, how she arrived at the conclusion that T.D. was shot while lying in the grave. *Iseral*, 2003 WL 22227193 at *9.  Certainly this evidence was relevant to how the murder occurred, and Petitioner has failed to describe how it inflamed the jury.  Thus, the use of the replica did not deny Petitioner due process of law.

### 9.  Petitioner's Claim That the Trial Court Allowed the Introduction of Hearsay Statements Allegedly Made by the Victim

Petitioner claims the trial court erred, and violated his constitutional right to confrontation, by allowing Joey Spradlin to testify regarding hearsay statements allegedly made by the victim.  D.E. 1 at 12.  On direct examination, the Government asked Spradlin if whether, during the time Petitioner and others were sleeping with the victim on the porch, he heard her say anything about rape.  *Iseral*, 2003 WL 22227193 at *10.  Spradlin replied, "'I didn't actually hear her say that they are raping me, but it seems like I heard her say no, but they didn't stop, so.'"  *Id.*  In his Reply brief, Petitioner argues that "[t]he hearsay statements were extremely prejudicial to Petitioner because it was the only significant evidence of rape.  Even more prejudicial was the fact that the alleged declarant was unavailable to cross-examine, or to deny

that she made the statements that Spradlin attributed to her." D.E. 19 at 8. Because the Supreme Court of Kentucky only considered whether the statements fell within an exception to the hearsay rule, and not whether Petitioner was denied his Sixth Amendment right to Confrontation, the Court reviews this claim *de novo*.

Under the Sixth Amendment to the Constitution, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court held that the Confrontation Clause prohibits the admission of testimonial, out-of-court statements made by a witness unless the witness is unavailable to testify and the defendant has had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 59 (2004).[4] Thus, under *Crawford*, "[w]here testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford*, 541 U.S. at 69. Although the Court did not provide a comprehensive definition of "testimonial," it noted that, at a minimum, it applies to "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* The Sixth Circuit has broadly defined "testimonial" as "any statement made in circumstances in which a reasonable person would

---

[4] Under *Whorton v. Bockting*, 549 U.S. 406, 416-421 (2007), the Supreme Court's decision in *Crawford* is not retroactively applicable to cases on collateral review. The decision in *Crawford* was rendered on March 8, 2004. On December 18, 2003, the Supreme Court of Kentucky denied a petition for rehearing on direct appeal in *Iseral v. Commonwealth*, No. 2001-SC-0602-MR, 2003 WL 22227193 (Ky. 2003). Petitioner then had 90 days to petition the United States Supreme Court for certiorari, *see* Rules of the Supreme Court of the United States, Rule 13, which expired on March 17, 2004. Thus, although a close call, *Crawford* was rendered before Petitioner's conviction became final, and the Court therefore analyzes Petitioner's Confrontation Clause claim under the precedent set forth in *Crawford*. *See Beard v. Banks*, 542 U.S. 406, 411 (2004) (noting that "[s]tate convictions are final 'for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied'") (citation omitted).

realize that it likely would be used in investigation or prosecution of a crime." *United States v. Cromer*, 389 F.3d 662, 673 (6th Cir. 2004) (internal quotation marks and citations omitted).

The Court in *Crawford* held that, with respect to non-testimonial hearsay, it does not violate the Constitution to leave the development of hearsay law to the states. *Crawford*, 541 U.S. at 69. The Court noted that this approach "exempt[s] such statements from Confrontation Clause scrutiny altogether." *Id.* Thus, if a statement is not testimonial, its introduction does not violate the Confrontation Clause. *See Davis v. Washington*, 547 U.S. 813, 821 (2006) (noting that only testimonial statements "cause the declarant to be a 'witness' within the meaning of the Confrontation Clause" and that "[i]t is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause").

Petitioner complains that he lacked a prior opportunity to cross-examine T.D. about her statements, and thus, they were admitted in violation of the Confrontation Clause. To the contrary, T.D.'s statement was not testimonial, and it was therefore properly admitted in accordance with the Confrontation Clause. It is clear that T.D.'s statement does not fall within any of the enumerated categories set forth by the Court in *Crawford*, nor is it encompassed by the broad definition set forth by the Sixth Circuit. T.D. made the statement under extreme stress, and certainly not with the intention that it be used in an investigation or at trial. Thus, the statement is removed from Confrontation Clause scrutiny altogether.

Petitioner argues that Spradlin's testimony was unreliable given his history as a convicted felon and his desire to place the blame for T.D.'s rape and murder on one of the other individuals present that night. *See* D.E. 19 at 10. However, Spradlin **was** available for cross-examination; thus, there was no Confrontation Clause violation with respect to **his** statements. The only

statements at issue were those uttered by the victim, not the victim's statements as recounted by Spradlin in court.

Petitioner was not denied the right to confrontation by the state court's admission of the victim's hearsay statements. Petitioner is not entitled to relief on Ground 9.

### 10. Petitioner's Claims That the Trial Court Dismissed Jurors, Failed to Strike Jurors for Cause, and Permitted Manipulation of the Jury Pool

Petitioner next raises several claims regarding the jury selection process. D.E. 1 at 12. He claims that the state trial court's errors denied him the constitutional right to a fair and impartial jury composed of a fair cross-section of the community. *See* D.E. 19 at 12. His arguments can be broken down into three main categories: 1) improper dismissal of jurors; 2) failure to strike jurors for cause; and 3) manipulation of the jury pool. Because the Supreme Court of Kentucky focused upon whether the trial court correctly followed the procedures required by Kentucky law, and did not consider whether those procedures violated Petitioner's constitutional rights, the Court reviews these claims *de novo*.

#### a. Petitioner's Claim That the Court Improperly Dismissed Jurors

Petitioner first argues that the trial court improperly allowed jurors to be absent from the panel. *Id.* He claims that "[o]ut of 107 potential jurors, 24 did not appear, and one was not even called. Juror absences were excused by the Clerk, rather than the Judge." *Id.*

Petitioner has failed to explain how the state court's actions violated the fair-cross section requirement. "To establish a prima facie violation of the fair-cross-section requirement . . . a defendant must prove that: (1) a group qualifying as 'distinctive' (2) is not fairly and reasonably represented in jury venires, and (3) 'systematic exclusion' in the jury-selection process accounts for the underrepresentation." *Berghuis v. Smith*, 130 S. Ct. 1382, 1392 (2010) (quoting *Duren v. Missouri*, 439 U.S. 357, 364 (1979)). Petitioner does not argue that a distinctive group was

excluded from the jury pool.  Furthermore, "[n]o 'clearly established' precedent of [the United States Supreme Court] supports [a petitioner's] claim that he can make out a prima facie case merely by pointing to a host of factors that, individually or in combination, *might* contribute to a group's underrepresentation."  *Id.* at 1395.  Such factors include a "practice of excusing people who merely alleged hardship or simply failed to show up for jury service . . . [and] failure to follow up on nonresponses."  *Id.*

The Supreme Court has held that there is no clearly established precedent holding that the procedures challenged by Petitioner – allowing jurors to be absent from the jury pool and allowing the clerk to excuse jurors – are unconstitutional.  Petitioner may have disagreed with the state court's method of excusing jurors, but he has not shown that it violated his constitutional rights.[5]

### b.  Petitioner's Claim That the Court Failed to Strike Jurors for Cause

Petitioner claims that, during voir dire, Jurors 14 and 77 stated that they could only consider death as the penalty for rape and murder, but they were not excused for cause.  D.E. 1 at 12.

On direct appeal, the Supreme Court of Kentucky found that "[t]he transcripts of voir dire show that the trial judge questioned each of these jurors extensively regarding their views on sentencing.  No attempt was made, as [Petitioner] suggests, to gloss over potential bias or prejudice through the use of a 'magic question.'"  *Iseral*, 2003 WL 22227193 at *11 (citation omitted).

---

[5]  The Supreme Court of Kentucky also noted that the record did not support Petitioner's claim that the clerk, rather than the trial judge, excused the jurors.  *Iseral*, 2003 WL 22227193, at *11.  Because Petitioner has failed to show that his constitutional rights were violated even if the clerk excused the absent jurors, it is unnecessary to resolve this factual dispute.

"[T]he proper standard for determining when a prospective juror may be excluded for cause because of his or her views on capital punishment . . . is whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'"  *Morgan v. Illinois*, 504 U.S. 719, 728 (1992) (quoting *Adams v. Texas*, 448 U.S. 38, 45 (1980)).  A juror who will only consider the death penalty upon a conviction "will fail in good faith to consider the evidence of aggravating and mitigating circumstances as the instructions require him to do. . . .  Therefore, based on the requirement of impartiality embodied in the Due Process Clause of the Fourteenth Amendment, a capital defendant may challenge for cause any prospective juror who maintains such views.  If even one such juror is empaneled and the death sentence is imposed, the State is disentitled to execute the sentence."  *Id.* at 729.

If Jurors 14 and 77 unequivocally stated that they would automatically vote for the death penalty if Petitioner were convicted, as Petitioner claims, ***and*** Petitioner did in fact receive the death penalty, then his death sentence would have to be overturned.  However, Petitioner's claim for relief fails for two reasons.  First, Petitioner did ***not*** receive the death penalty.  Second, the record belies Petitioner's assertions that Jurors 14 and 77 stated that they would automatically impose the death penalty upon a conviction.

When questioned by the prosecutor, Juror 77 initially stated that he could consider each of the different penalties and penalty ranges in Petitioner's case.  C.D. ROM "Court Documents," p. 168 (Notice of Filing by Respondent at D.E. 12).  Petitioner's counsel, Mr. Price, then asked Juror 77 whether he would focus upon the death penalty if Petitioner were convicted, and the following exchange took place:

> MR. PRICE:  . . . Will you automatically focus on the death penalty if you did find that he was guilty?

JUROR:      Yes.

MR. PRICE:   And, I assume, that you would not be—no one could sway you—

JUROR:      No.

MR. PRICE:   —if you convicted?

JUROR:      No.

MR. PRICE:   And you would vote for the death penalty?

JUROR:      Yes.

*Id.* at pp. 169-70.

Juror 77, however, further clarified his views when questioned by the court:

THE COURT:      Just one minute.  You mean what you're saying is, is if you found him guilty you would not consider 20 to—

JUROR:            Oh, yes.

THE COURT:      —50 or life or anything else?

JUROR:            Yes, if it, you know, come down to 20 years to 50, yes.

THE COURT:      What we want to make sure—

JUROR:            Well, I just misunderstood it.

THE COURT:      —is that you wouldn't go in the jury room and automatically say, well, he's guilty let's—

JUROR:            No.

THE COURT:      —whatever they do to them now, kill him or—

JUROR:            No, I don't think he's guilty until the last word is said.

THE COURT:      I'm not talking about guilty now.  I'm talking about you've already found him guilty.  You understand there's—

JUROR:            Yes.

THE COURT:          —two phases?  One you decide guilt or innocence, and then after, if you do find him guilty, then you have to fix the punishment.

JUROR:          Yeah.

THE COURT:          And that's your choices—

JUROR:          Yeah.

THE COURT:          —right there.  What we're interested in here is would you automatically say he's guilty, I'll give him 20 years, or would you consider life, life without parole, life with—or death, or all of them, and, then most important, just because you found him guilty you would not automatically give him death?

JUROR:          No.  No.

THE COURT:          Is what we're after.

JUROR:          Yeah, I understand now.

*Id.* at pp. 170-71.

Juror 77 reiterated that he would consider all possible penalties when he was again questioned by the court and Petitioner's counsel:

THE COURT:          In this case, before you consider the penalty, you have to find this man guilty of both murder and rape, and you said that you would consider all range of the penalty based upon whatever was presented to you?

JUROR:          Yes.

THE COURT:          Is that right?

JUROR:          Right.

THE COURT:          So you're not going to go to the jury room, and if you find him guilty and then go back and say, well, we ought to hang him?

JUROR:          No.  No.

. . .

MR. PRICE:          In this particular case, like you say, by the time you get into the jury room you have already found him guilty of intentional murder and rape.

Would you start out with the feeling that the death [penalty] was the appropriate punishment—

JUROR:                 No.

*Id.* at pp. 174-75.

It is clear from the record that although Juror 77 initially responded that he would focus upon the death penalty, he later clarified, more than once, that he would consider all applicable penalties in Petitioner's case, and that he would not automatically vote for the death penalty if he found Petitioner guilty.  A similar exchange occurred with Juror 14:

MR. PRICE:          . . . Would you tend to focus on the death penalty more than any of the other punishments?

JUROR:                 Probably.

MR. PRICE:          You think that under those circumstances that a person has committed intentional murder and rape that, in your mind, that would be the punishment?

JUROR:                 Uh-huh.

MR. PRICE:          And are you—are you pretty strong in your convictions?

JUROR:                 I probably would have to hear the evidence.

THE COURT:         The question is, is not exactly right.  See that one, two, three, four and five.

JUROR:                 Uh-huh.

THE COURT:         That's what you would consider if you found him guilty.

JUROR:                 Uh-huh.

THE COURT:         Now then, the question is, would you disregard one, two, three and four and just automatically sentence him to death?

JUROR:                 Oh, no.

. . .

THE COURT:          . . . You don't know anything about the case now, but what he said, if you found him guilty of murder and rape, what you're saying, you would not automatically sentence him to death?

JUROR:              Well, no, I would listen.

THE COURT:          You would consider life without parole, life without parole for 25 years, life—

JUROR:              Yes.

THE COURT:          —or even the minimum of 20 years?

JUROR:              Yes.

*Id.* at 213-15.

A review of the record indicates that both Juror 77 and Juror 14 stated that they could follow the court's instructions and would consider the entire range of penalties applicable to Petitioner's case. They did not state, as Petitioner argues, that they would automatically impose the death penalty in the event of a conviction. In fact, Petitioner's claim is undermined by the fact that the jury did ***not*** impose the death penalty. The Court cannot conclude, on these facts, that Petitioner did not receive an impartial jury.

### c. Petitioner's Claim That the Prosecutor Manipulated the Jury Pool

Finally, Petitioner claims that, on the second day of voir dire, the Commonwealth changed the order of calling jurors, which resulted in Juror 84 being called after the defense had used all of its peremptory challenges. D.E. 1 at 12. He argues that "the defense would have struck this juror had they been called properly." *Id.* The Supreme Court of Kentucky found that this claim lacked merit, and that Petitioner failed to cite to any authority supporting his position that the Government acted improperly. *Iseral*, 2003 WL 22227193 at *11.

The Supreme Court has held that there is no constitutional right to peremptory challenges. *See Ross v. Oklahoma*, 487 U.S. 81 (1988). The petitioner in *Ross* argued that he

33

was required to exercise a peremptory strike to strike a juror the state appellate court later determined should have been stricken for cause. *See Ross,* 487 U.S. at 84-85. The United States Supreme Court ultimately held that this did not violate the petitioner's right to a fair trial. *Id.* at 88. The Court stated:

> Petitioner was undoubtedly required to exercise a peremptory challenge to cure the trial court's error. But we reject the notion that the loss of a peremptory challenge constitutes a violation of the constitutional right to an impartial jury. We have long recognized that peremptory challenges are not of constitutional dimension. They are a means to achieve the end of an impartial jury. So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated.

*Id.* (citations omitted).

Petitioner does not argue that Juror 84 was biased, or that his presence on the jury resulted in a jury that was not impartial. Rather, he simply claims that, given the opportunity, he would have chosen to eliminate Juror 84 from the jury pool. Therefore, Petitioner's constitutional rights were not violated when he was unable to use a peremptory challenge to eliminate Juror 84. Petitioner is not entitled to relief on Ground 10.

### D. Grounds 11-14

### 1. Ineffective Assistance of Counsel

Whether Petitioner was deprived of his right to effective assistance of counsel as asserted in Grounds 11-14 is a mixed question of law and fact. *Mitchell*, 325 F.3d at 738 (citing *Olden v. United States*, 224 F.3d 561, 565 (6th Cir. 2000)). Federal courts apply the "unreasonable application" prong of § 2254(d)(1) to mixed questions of law and fact. *Id.* (citing *Harpster v. Ohio*, 128 F.3d 322, 327 (6th Cir. 1997)). A state court decision results in an "unreasonable application of Federal law" pursuant to § 2254(d)(1) when it "applies [Supreme Court] precedents to the facts in an objectively unreasonable manner." *Brown*, 544 U.S. at 141

(citations omitted).  The Supreme Court has stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.   Rather, that application must also be *unreasonable*."  *Mitchell*, 325 F.3d at 738 (quoting *Williams v. Taylor*, 529 U.S. 362, 411 (2000)) (emphasis added).  In addition, federal courts may only consider the holdings, as opposed to the dicta, of Supreme Court opinions as of the time of the state court decision, when evaluating whether the state court unreasonably applied "clearly established federal law."  *Id.* (citing *Williams*, 529 U.S. at 412).

*Strickland v. Washington*, 466 U.S. 668 (1984), establishes the elements of a claim of ineffective assistance of counsel.  Such a claim has two components. "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.* at 687.  However, a defendant is not permitted to second-guess trial counsel's strategic decisions.  *Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002).  Thus, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Strickland*, 466 U.S. at 689 (internal quotations omitted).   Under the second component of a claim for ineffective assistance of counsel, "the defendant must show that the deficient performance prejudiced the defense."  *Id.* at 687.   That is, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A defendant has the burden of making both showings, otherwise "it cannot be said that the conviction or death sentence resulted from a breakdown in

the adversary process that renders the result unreliable." *Id.* at 687.  Finally, in appropriate circumstances, prejudice may be considered at the outset.  *See id.* at 697 (stating that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.").

Recently, the Supreme Court commented on the interaction between the § 2254(d) and *Strickland* standards of review.  *See Harrington v. Richter,* 131 S. Ct. 770 (2011).  The Court emphasized that "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Id.* at 785.  Thus, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*

Later, the Court stated that it is "difficult" to establish a state court's application of *Strickland* as unreasonable under § 2254(d), noting that both standards are "'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* at 788 (citations omitted).  The Court cautioned federal habeas courts to "guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." *Id.*  According to the Court, under § 2254(d), "the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*  Additionally, the Court noted that "[t]he *Strickland* standard is a general one, so the range of reasonable applications is substantial." *Id.* (citation omitted).

The Court addresses each of Petitioner's claims of ineffective assistance in turn, and conducts its analysis in accordance with the deference due under AEDPA.

## 2. Ground 11: Petitioner's Claim That Counsel Failed to Obtain a Competency Evaluation

Petitioner argues that trial counsel was ineffective for failing to obtain a mental evaluation to determine Petitioner's competency to stand trial. D.E. 1 at 13. He claims "it was never demonstrated that he understood the nature of the proceedings against him. He never understood the conversations that he had with his attorney, and he was unable to assist in his defense." *Id.*

Petitioner raised this issue in an 11.42 motion before the state court. *See* D.E. 1-5 at 5-6. The McCreary Circuit Court found that "[Petitioner's] counsel made every reasonable effort to gain additional experts to testify to his competency." *See* Order Overruling RCr 11.42 Motion at 5. The court found that counsel argued at length at trial that:

> Either the death penalty be excluded because we have not had the opportunity to produce a doctor or someone of that nature to give the Court the background that the Court needs in order to determine the IQ and whether or not he is disqualified for the death [penalty], or in the alternative a continuance be granted and that we be allowed funds to hire Dr. Pat McGregor to give the Court that background information.

*Id.* at 5-6 (quoting *Transcript of Evidence*, Volume 1, pg. 4). The court also noted that trial counsel argued that mental retardation should be based upon more than Petitioner's IQ score, including interviews with relatives, teachers, and neighbors. *Id.* at 6. Although the motion was denied, it is clear that trial counsel went to great lengths to secure an expert evaluation.

The court noted that, at sentencing, trial counsel called four witnesses to testify to mitigating factors, including competency issues. *Id.* These witnesses included a psychologist who performed an intellectual assessment on Petitioner and characterized him as having mild

mental retardation, and Petitioner's high school special education teacher.  *Id.* at 6-7.  The court found that, while the trial judge did not order that Petitioner undergo a competency evaluation,[6] trial counsel expended great effort to secure funding so that experts could evaluate Petitioner.  *Id.* at 8.

The Kentucky Court of Appeals affirmed, finding "counsel's actions in this regard to be completely reasonable."  *Iseral*, 2008 WL 4998501, at *4.  This Court agrees.  The record indicates that counsel went to great lengths to secure mental evaluations of Petitioner.  The decision whether or not to order a competency evaluation was within the discretion of the trial judge, not defense counsel.  Counsel's actions were in no way deficient, and the state court did not unreasonably apply *Strickland* by so holding.  Petitioner is not entitled to relief on Ground 11.

### 3.  Ground 12: Petitioner's Claim That Counsel Failed to Investigate Exculpatory Evidence

Petitioner claims that trial counsel failed to investigate certain exculpatory evidence that was later discovered by counsel appointed for his re-sentencing hearing.  D.E. 1 at 13.  He states, "This evidence included the testimony of Franklin Jones, who had contact with the victim after she was allegedly killed, and federal gun records, which proved that the alleged murder weapon was not the shotgun owned by Ben Coffee [sic]."  *Id.*  Petitioner further elaborates upon these claims in his Reply, in which he argues that a more thorough investigation by counsel would have convinced the jury that Spradlin was the true killer.  *See* D.E. 19 at 13-19.

Petitioner raised this issue in post-conviction proceedings in state court.  D.E. 1-5 at 6-8.  The McCreary Circuit Court found that counsel was not deficient, noting that "[c]ounsel has the 'freedom of discretion in determining means of presenting his client's case.'"  Order Overruling

---

[6]  As the court noted, under Kentucky law, the trial judge, not defense counsel, had discretion to order a competency evaluation.  *Dye v. Commonwealth*, 477 S.W.2d 805, 806 (Ky. App. 1972).

RCr 11.42 Motion, at 10 (quoting *Ramsey v. Commonwealth*, 399 S.W.2d 473, 475 (Ky. App. 1996)).  The court further noted that "a testimony of a person who thought the missing girl looked like a girl he saw being picked up in a car does not necessarily establish that he saw the victim, nor does it preclude the prosecution witness' account of what happened."  *Id.* at 11.

The Kentucky Court of Appeals affirmed, finding that the decision whether or not to call Franklin Jones as a witness was fully within counsel's discretion.  *Iseral*, 2008 WL 4998501 at *3.  The court also noted that substantial testimony implicated Petitioner in the crime, and one witness's testimony that he thought he saw a girl who looked like the victim would not have changed the outcome of the trial.  *Id.*  The court stated that, even if the jury believed Jones's testimony, it would not have shown that Petitioner did not commit the crime.  *Id.*

Franklin Jones's affidavit is in the record, and it was presented in the state post-conviction proceedings.  D.E. 21-1; *see also* Order Overruling RCr 11.42 Motion, at 10 (noting that Franklin Jones's affidavit was part of the record considered by the trial court when ruling on Petitioner's RCr 11.42 Motion).  The affidavit contains no specific information regarding the date Mr. Jones believed he saw the victim.  Rather, it simply states that Jones encountered a woman he later believed to be T.D. "[o]ne evening in the summer of 1999."  D.E. 21-1 at 1. Therefore, given the murder occurred on July 29, 1999, it does not contradict the Government's theory of the case, nor does it preclude a finding by the jury that Petitioner was the one who murdered T.D.  Petitioner claims that Jones would have testified that he saw the victim after the Commonwealth claimed she was murdered, but he wholly fails to explain this claim.  Jones's affidavit states that he encountered the woman he later believed to be T.D. "at approximately 10 p.m."  *Id.*  The affidavit later states that Jones encountered the woman again at the same location about 20 minutes later.  *Id.*  Petitioner fails to explain how this would have precluded the

Commonwealth's theory, through Spradlin's testimony, that T.D. was raped "sometime after midnight" and murdered at daylight.  *Iseral*, 2008 WL 4998501, at *1 (summarizing Spradlin's testimony at trial).

This Court can only consider the evidence before the state court when determining whether Petitioner is entitled to habeas relief.  *See Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011) (holding that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits").  On the basis of that record, which includes Jones's affidavit, the Court cannot find that counsel was deficient.  Counsel reasonably concluded that Jones's testimony would not preclude the Government's theory of the case, nor would it exonerate Petitioner, and counsel therefore chose not to call Jones as a witness.  This decision was within counsel's discretion.  The state court did not unreasonably apply *Strickland* by so holding.

The state court also considered whether counsel was ineffective for failing to introduce tracking information for the shotgun.  The court found this claim "completely illogical," noting that the tracking information "would only have shown who initially purchased the gun," not who subsequently bought it.  *Iseral*, 2008 WL 4998501 at *3.  This Court agrees.  In addition, Petitioner has failed to provide any detail whatsoever other than the conclusory assertion that federal gun records would have shown that the shotgun was not the one owned by Coffey.  Petitioner has provided no information from which the Court could conclude that counsel was deficient for failing to introduce such records.  The state court did not unreasonably apply *Strickland* by finding that counsel was effective.

Petitioner is not entitled to relief on Ground 12.

### 3.  Ground 13: Petitioner's Claim That Counsel Failed to Prepare to Impeach the Government's Witnesses

Petitioner complains that counsel only briefly cross-examined the Government's witnesses and failed to interview them prior to trial, despite a court order allowing such interviews to be performed.  D.E. 1 at 13.  Petitioner raised this claim in state post-conviction proceedings.  D.E. 1-5 at 8-11.  The McCreary Circuit Court found counsel extensively cross-examined Spradlin, the Government's primary witness.  *See* Order Overruling RCr 11.42 Motion, at 12-15.  The court also noted that counsel is not required "to cross examine witnesses for a certain length of time, as long as the attorney is motivated by the best interest of the defendant."  *Id.* at 12.

The Court finds that the state court did not unreasonably apply *Strickland*.  Petitioner provides no information from which the Court could conclude that counsel was deficient.  The length of cross-examination and which witnesses counsel chooses to interview are matters of trial strategy.  Petitioner also fails to show how he was prejudiced by counsel's actions because he does not explain which avenues of cross-examination counsel should have explored, or how the outcome of the trial would have been different if counsel had interviewed certain witnesses.  Instead, Petitioner engages in pure speculation.  The state court did not unreasonably determine that counsel was effective under the standard set forth in *Strickland.*

### 4.  Ground 14: Petitioner's Claim of Cumulative Error

In Ground 14, Petitioner argues that the cumulative effect of counsel's alleged errors denied him a fair trial.  D.E. 1 at 14.  Contrary to some courts, the Sixth Circuit has not interpreted Supreme Court precedent as permitting a "cumulative error" argument, but has instead held that "cumulative error" is not cognizable as a separate ground of relief under 28 U.S.C. §2254.  *See Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006) ("[T]he law of this

Circuit is that cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue."); *Millender v. Adams*, 376 F.3d 520, 529 (6th Cir. 2004).  In addition, because Petitioner has failed to show that counsel committed ***any*** errors of constitutional magnitude, he cannot show that the cumulative effect of counsel's actions prejudiced his case in any way.

### E.  An Evidentiary Hearing is Not Warranted

Petitioner has not formally requested an evidentiary hearing, but he did on the claims made in Grounds 11-13 of his § 2254 petition in state court, and relies on those filings as his substantive briefs herein.  *See* D.E. 1-5 at 5-12.  The Court does not construe this as a request for a hearing in this Court.  Even if it did, however, Petitioner is not entitled to such a hearing. Section 2254 states:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court ***shall not*** hold an evidentiary hearing on the claim unless the applicant shows that –
> (A) the claim relies on –
>     (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>     (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2) (emphasis added).

In *Cullen v. Pinholster*, 131 S.Ct. 1388 (2011), the Supreme Court held that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen*, 131 S.Ct. at 1398.  The Court stated, "It would be contrary to [the purpose of AEDPA] to allow a petitioner to overcome an adverse state-court decision with new evidence introduced in a federal habeas court and reviewed by that court in the first instance

effectively *de novo*." *Id.* at 1399.  The Court further noted, "In practical effect . . . this means that when the state-court record 'precludes habeas relief' under the limitations of § 2254(d), a district court is 'not required to hold an evidentiary hearing.'" *Id.* (citing *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)).  The Court has reviewed Petitioner's claims in Grounds 11-13 and concluded that he is not entitled to relief under 28 U.S.C. § 2254(d)(1).  Thus, the Court can only consider the record before the state court at the time it rendered its decision, and Petitioner is not entitled to an evidentiary hearing.

In addition, "a petition may be summarily dismissed if the record clearly indicates that the petitioner's claims are either barred from review or without merit . . . . '[B]ald assertions and conclusory allegations do not provide sufficient ground . . . to require an evidentiary hearing.'" *Stanford v. Parker*, 266 F.3d 442, 459-60 (6th Cir. 2001).  Here, Petitioner's claims are either barred from review or without merit.

In sum, for various reasons, Petitioner's request for an evidentiary hearing is **DENIED**.

### F.  Certificate of Appealability

A Certificate of Appealability may issue where a petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  This standard requires a petitioner to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see Miller-El v. Cockrell*, 537 U.S. 322, 335-38 (2003) (discussing development of standard).  The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement.  28 U.S.C. § 2253(c)(3); *see Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment of . . . claims") (citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)).  For dismissals on procedural grounds, as to when a

Certificate of Appealability should issue, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *See Slack*, 529 U.S. at 484. No reasonable jurist would find the assessments above to be wrong or debatable; thus, no Certificate of Appealability should issue.

### III. CONCLUSION AND RECOMMENDATION

Having reviewed each of Petitioner's grounds for § 2254 relief, the Court concludes that Petitioner has failed to make the requisite showing that would entitle him to any relief. Therefore, the Court **RECOMMENDS** that Petitioner's petition for habeas corpus (D.E. 1) be **DENIED.**

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rules Governing Section 2254 Proceedings, Rule 8(b). Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 10th day of January, 2013.

Signed By:

*Hanly A. Ingram*

United States Magistrate Judge